# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No. CIV-12-431-KEW
                                    )
$1,228.89 IN GENUINE U.S.           )
CURRENCY and 2011 CHEVROLET         )
CAMARO, VIN 2G1FK1EJXB9157757,      )
                                    )
            Defendants.             )

## OPINION AND ORDER

This matter comes before this Court on the United States' Motion for Summary Judgment filed August 6, 2013 (Docket Entry #17). The United States served a Notice of Complaint for Forfeiture upon Crescent Bank of Chesapeake, Virginia, Chris D. Dunn of Durant, Oklahoma at his place of incarceration in the Muskogee County Jail, and Amannda Malaby of Atoka, Oklahoma at her place of incarceration in the Muskogee County Jail on November 27, 2013. The Notices, which are filed of record, indicate the dates by which claims to the property referenced in this action must be filed with the Court and the procedure for doing so.

Additionally, the United States posted a Notice of Civil Forfeiture on an official government website for at least 30 days beginning on June 5, 2013 as evidenced by the Declaration of Publication filed August 6, 2013. To date, no claims to the subject property have been filed with this Court. Further, no responses to the pending motion for summary judgment have been

filed. Accordingly, the motion is unopposed and the relief requested by the United States shall be granted. To that end, this Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1) This action is an *in rem* proceeding for forfeiture by the United States due to certain acts or omissions which give rise to the forfeiture of the subject property. 28 U.S.C. § 1355(b)(1)(A). This Court assumes appropriate subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, 28 U.S.C. § 1355(a) and 18 U.S.C. § 981(a)(1)(C).

2) The undersigned exercises appropriate jurisdiction over this case since the United States has consented to a United States Magistrate Judge on January 31, 2013. No further consents are necessary for this Court to exercise its jurisdiction. *See* United States v. Real Property Located in Fresno Co., 135 F.3d 1312, 1316-17 (9th Cir. 1998).

3) On May 14, 2012, the Atoka County Sheriff arrested Chris Drew Dunn ("Dunn") and Amannda L. Malaby ("Malaby") on traffic and drug related offenses. The United States seized the $1,228.89 in genuine U.S. currency and the 2011 Chevrolet Camaro, VIN 2G1FK1EJXB9157757 (the "Property") from Dunn and Malaby on May 17, 2012 pursuant to a search warrant. The Property was placed into the custody of the Secret Service.

4) Atoka County Deputy Sheriff Greg Munholland initiated a traffic

2

stop of a 2011 Chevrolet Camaro for a speeding violation. During the traffic stop, he contacted the driver and registered owner of the vehicle, Malaby. Deputy Munholland smelled an odor of alcohol coming from the vehicle and asked the driver to exit the vehicle and return to his police car so he could obtain her information and check her driver's license status. Malaby denied drinking or having an open container of alcohol in the car. Deputy Munholland returned to the vehicle and asked passenger Dunn if there were any open containers of alcohol in the vehicle. Dunn stated "yes" and handed the Deputy an open can of beer. Deputy Munholland returned to his vehicle and cited Malaby for Transporting an Open Container of Alcohol and Speeding. He also asked for consent to search the vehicle and Malaby stated "yes". Deputy Munholland contacted the Sheriff's dispatch center and had them log in his consent search of the vehicle. During his search of the vehicle, Deputy Munholland found a quantity of controlled dangerous drugs (marijuana and methamphetamine). He also recovered forty-seven (47) JP Morgan Chase Visa cards. Twenty-three (23) of the cards were embossed with the name "Chris Dunn" and various business names. Twenty-four (24) of the cards were embossed with the name "Amannda Malaby" and several different business names. Additionally, a laptop computer was found in the vehicle.

5) Deputy Munholland questioned the occupants of the vehicle about the excessive number of credit cards in their possession. Both Dunn

and Malaby gave him very vague and nebulous answers regarding the cards, explaining that they were in a variety of internet businesses. He found the answers given by Malaby and Dunn about the cards to be suspicious and insufficient to explain why two people would have almost fifty, nearly identical, credit cards in their possession. Deputy Munholland believed that the cards were suspect and seized them for further investigation.

6) On May 16, 2011, Captain Ben Veenstra of the Durant Police Department and District Attorney Investigator David Cathey, both members of the Secret Service Economic Crimes Task Force, responded to Deputy Munholland's request for investigative assistance into the credit cards he seized. Captain Veenstra and Investigator Cathey determined through their investigation of the cards that the account numbers embossed on the cards were not JP Morgan Chase account numbers but were account numbers issued by U.S. Bank and were therefore counterfeit or fraudulent in nature, and each card a violation of the Oklahoma Computer Crimes Act and the Oklahoma Credit Card Crime Act. The investigation into the cards also revealed that several of the U.S. Bank card numbers in possession of Dunn and Malaby had been flagged by U.S. Bank for suspected fraudulent activity.

7) On May 17, 2012, Captain Veenstra and Investigator Cathey learned that Malaby had posted bond for Dunn on the Atoka County drug charges. She secured his release from jail, and they were

traveling back to Texas in the same 2011 Chevrolet Camaro they had been driving when Deputy Munholland contacted them on May 14, 2012. Based on the forty-seven (47) counterfeit credit cards, Captain Veenstra and Investigator Cathey had probable cause to arrest Dunn and Malaby for violations of the Oklahoma Computer Crimes Act and the Oklahoma Credit Card Crime Act. A traffic stop was initiated, with the assistance of uniformed officers of the Durant Police Department, near U.S. 69 and North Washington in the City of Durant Oklahoma.

8) Dunn and Malaby were taken to the Durant Police Department to be interviewed regarding the origin of the cards. Dunn and Malaby were in possession of seven additional cards, identical to the cards seized by Deputy Munholland on May 14, 2012. Dunn had three cards on his person, and Malaby had four cards in her purse and $1,228.89 in genuine United States Currency.

9) Dunn and Malaby declined to waive their rights after being read the *Miranda* Warning and declined to give a statement regarding the cards. Though she declined to be interviewed and did not waive her rights, Malaby made several unsolicited and spontaneous statements to officers while in custody. Malaby disavowed any knowledge of the origin of the cards, but stated that they were "fakes" and referred to them as "props". Malaby stated that Dunn had an office in the house but she did not know what went on in it.

10) Investigator Cathey and Capt Veenstra learned from their

5

investigation and information provided by U.S. Bank that a fraudulent credit card transaction, using one of the recovered U.S. Bank account numbers, occurred at an AT&T store in Wylie, Texas, between the time of Malaby's departure from Oklahoma on May 14, 2012, and return to Oklahoma on Wednesday night, May 16, 2012. The location of the AT&T store where the transaction occurred corresponds with GPS information contained in Malaby's phone as being a location looked up using that phone.

11) On May 24, 2012, United States Secret Service Agent Frank Coffman interviewed Dunn at the Durant Police Department. Prior to the interview, Dunn was informed of the Miranda warning and signed a waiver form agreeing to speak. Dunn stated that during the fall of 2011, he began manufacturing counterfeit credit cards at his home in Richardson, Texas. He stated that he would use the cards at electronics stores to purchase computer products and then re-sell the products via the internet at a discounted price. Dunn estimated that the criminal scheme earned approximately $50,000. He indicated the money found in Malaby's possession was proceeds from the crime. The money used to purchase her 2011 Camaro was the result of the counterfeit credit card scheme and proceeds of the crime.

12) Special Agent Coffman also interviewed Malaby at the Durant Police Department. She was informed of the *Miranda* warning and signed a waiver form agreeing to speak. Malaby stated that during

6

the fall of 2011, her husband, Chris Dunn, began manufacturing counterfeit credit cards at their home in Richardson, Texas. They used the cards at electronics stores to purchase computer products and then re-sell the products via the internet at a discounted price. She estimated that the criminal scheme earned her approximately $30,000. She indicated that the majority of the money found in her possession was proceeds from the crime, and her 2011 Camaro was purchased with proceeds derived from the scheme.

13) Dunn and Malaby were charged in Bryan County District Court with violations of the Oklahoma Computer Crimes Act and the Oklahoma Credit Card Crime. Malaby and Dunn were indicted in the United States District Court for the Eastern District of Oklahoma on August 15, 2012 and charged with Possession of Fifteen or More Counterfeit Access Devices in violation of 18 U.S.C.§§ 1029(a)(3) & (c)(1)(A)(i) and 18 U.S.C. § 2; and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 2. Both defendants entered guilty pleas to the charge of Aggravated Identity Theft pursuant to plea agreements on September 19, 2012. Both were sentenced on February 13, 2013.

**CONCLUSIONS OF LAW**

A) Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

B) Since the allegations of the United States are not contested and are supported by competent evidence, this Court finds no genuine issue of material fact exists in relation to the facts set forth in this Opinion and Order. Consequently, the questions remaining for this Court are whether the facts, as set forth, are sufficient to grant summary judgment in favor of the United States and whether the law would support such a finding in light of the undisputed

8

facts.

> In forfeiture actions,
>
> [T]he Government bears the burden of going forward, and must show probable cause that the property subject to the forfeiture is involved in criminal activity. Once this is established, the burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture.
>
> United States v. $39,660 in Canadian Currency, 801 f.2d 1210, 1216-17 (10th Cir. 1986); 21 U.S.C. § 983(c)(1).

In meeting its burden, the United States is "only required to establish probable cause as to a nexus between the [property] and criminal drug activity." United States v. Daccarett, 6 F.3d 37, 56 (2nd Cir. 1993). Through the evidence in support of the summary judgment Motion, the United States has demonstrated the requisite nexus between Dunn's and Malaby's illegal activity and the Property which is the subject of this forfeiture. 21 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 983(c)(2) & (3). Thus, the burden has appropriately shifted to Dunn and Malaby to prove that the Property is not subject to forfeiture. Neither Dunn nor Malaby have responded to this action or the subject Motion with evidence or argument to indicate that the Property is not subject to forfeiture.

Having found uncontroverted evidence in support of forfeiture, this Court finds summary judgment should be granted in favor of the United States. Forfeiture of the Property shall be ordered.

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment filed August 6, 2013 (Docket Entry #17) is hereby

**GRANTED**.  As a result,

IT IS ORDERED, ADJUDGED and DECREED that judgment be entered in favor of Plaintiff United States of America and against the subject Property more particularly described herein is hereby **FORFEITED** to Plaintiff United States of America.

IT IS SO ORDERED this 22nd day of October, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE